# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| FARION C. HOLT, | ) |
| | ) |
|        **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )   **Cause No. 1:13-cv-1861-WTL-DKL** |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|        **Defendant.** | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Farion C. Holt requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("the Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record and the briefs of the parties, rules as follows.

## I.     APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is

not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

2

her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II. PROCEDURAL HISTORY

Mr. Holt protectively filed for DIB and SSI on December 10, 2010, alleging he became disabled on January 1, 2010, primarily due to a learning disability, nervousness, and an anxiety disorder. His application was denied initially on March 8, 2011, and again upon reconsideration on April 28, 2011. Following the denial upon reconsideration, Mr. Holt requested and received a hearing in front of Administrative Law Judge ("ALJ") Janice Bruning. A video hearing, during which Mr. Holt was represented by counsel, was held on May 2, 2012. The ALJ issued her decision denying Mr. Holt's application on August 2, 2012. The Appeals Council denied Mr. Holt's request for review on September 25, 2013. After the Appeals Council denied review of the ALJ's decision, Mr. Holt filed this timely appeal.

## III. EVIDENCE OF RECORD

The medical evidence of record is aptly set forth in Mr. Holt's brief (dkt. no. 16) and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

## IV. THE ALJ'S DECISION

The ALJ determined at step one that Mr. Holt had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. At steps two and three, the ALJ concluded that Mr. Holt had the severe impairment of "organic mental disorder," R. at 13, but that his impairment did not meet or medically equal a listed impairment. At step four, the ALJ determined that Mr. Holt had the RFC to "perform a full range of work at all exertional levels but can only perform simple, routine tasks and should avoid contact with the public for work

3

related purposes and no more than occasional contact with co-workers and supervisors." *Id*. at 16. Given this RFC, the ALJ determined that Mr. Holt could perform his past relevant work as a housekeeper. Accordingly, the ALJ concluded that Mr. Holt was not disabled as defined by the Act.

## V. DISCUSSION

In his brief in support of his Complaint, Mr. Holt alleges that the ALJ: 1) erred in concluding that his mental impairment did not meet or medically equal a listed impairment; 2) failed to call a psychologist to testify whether his mental impairment met or medically equaled a listed impairment; 3) erred in her credibility determination; 4) and erred at Steps Four and Five in limiting him to "simple, routine tasks." His arguments are addressed, in turn, below.

### A. Listed Impairment

Mr. Holt first argues that "substantial psychological examination evidence prov[es] that his combined mental impairments met or, medically equaled Listing 12.05B or C[.]" Pl.'s Br. at 5. Listing 12.05 is the listing for an intellectual disability and requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Subsection B requires "[a] valid performance, or full scale IQ of 59 or less[.]" *Id*. Subsection C requires "[a] valid performance, or full scale IQ or 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" *Id*.

Mr. Holt points to the consultative examination report conducted by Dr. Wayne E. Hoye, which noted that "Mr. Holt was administered the Wechsler Adult Intelligence Scale IV and obtained a Full-Scale IQ Score of 57[.]" R. at 237. The ALJ, however, noted that this score was

4

obtained when Mr. Holt was 44 years old, and that there was "no evidence in the record that the claimant ha[d] deficits in adaptive functioning before age 22." R. at 15; *see also id*. at 255 (Dr. J. Gange concluding that "there was no evidence available to support intellectual deficit prior to age 22"). She went on to note the following:

> The attorney submitted a transcript from the claimant's high school which shows many poor grades and the claimant claims he received special education services. However, that is not proof of poor adaptive functioning before age 22 particularly in light of the claimant's ability to perform substantial gainful activity, do activities of daily living, drive alone, operate a lawn mower, be involved in relationships, etc. The claimant also alleged that he has never lived on his own. However, he also admits that he takes care of his mother by getting things for her since she has problems walking. He walks with his dog, shops, uses a cell phone, etc. He also has children and sees them regularly, which shows that the claimant can have relationships. He has also worked for many years, without any evidence of change in condition or severity. For all these reasons, the undersigned finds the evidence does not support the assertion that the claimant meets the requirements of section 12.05.

*Id*. Mr. Holt disagrees, arguing that the ALJ impermissibly played doctor in reaching this conclusion.

In support, he first cites to *Guzman v. Bowen*, 801 F.2d 273 (7th Cir. 1986), in which the Seventh Circuit assumed that Ms. Guzman's IQ score recorded in 1982 reflected her IQ in 1979, three years earlier. The court reasoned that "in the absence of evidence leading to a contrary result we must and do assume that an IQ test taken after the insured period correctly reflects the person's IQ during the insured period." *Id*. at 275. *Guzman* does not necessitate a different result in Mr. Holt's case, however, because the ALJ did cite to much contrary evidence, including Mr. Holt's past work experience and his daily activities. *See Adkins v. Astrue*, 226 Fed. App'x 600, 605 (7th Cir. 2007) ("Although low IQ scores are indicative of retardation, other factors, such as the claimant's life activities and employment history, must be considered and weighed and properly play into the ALJ's analysis.").

5

He then cities to two cases from the Southern District of Indiana, arguing that they "require reversal of this denial decision." Pl.'s Reply at 5. Of course, these opinions are unpublished and not binding on this Court, so they do not require anything. In *King v. Barnhart*, No. 1:06-cv-0381-DFH-TAB, 2007 WL 968746 (S.D. Ind. Feb. 26, 2007), the court found that evidence of Mr. King's placement in special education classes, his repeat of both kindergarten and first grade, and the absence of recent deterioration in his mental abilities were sufficient to illustrate onset before age 22. Similarly, in *Hendricks v. Astrue*, No. 1:08-cv-0376-DFH-TAB, 2009 WL 648610 (S.D. Ind. Mar. 11, 2009), the court found that "[t]he requirement of early manifestation, as that requirement has been interpreted, was met by Mr. Hendricks. He showed that he had left school after ninth grade and had been in special education classes while he was in school." *Id.* at *5

The Court recognizes that Mr. Holt was also enrolled in special education classes in high school and received poor grades; however, this does not necessitate a finding of onset prior to age 22. *See Adkins*, 226 Fed. App'x at 605 ("Adkins has failed to demonstrate significantly subaverage general intellectual functioning nor deficits in his adaptive functioning prior to age twenty-two, as required in the listing schedule. Indeed, aside from Adkins's testimony that he completed school only through the eighth grade, the record contains only minimal evidence concerning his cognitive and medical state before he reached twenty-two years of age. The fact that Adkins was able to be gainfully employed until the age of forty-one without material complaints from his employers further exemplifies his adaptive abilities."). Moreover, the ALJ properly relied on the opinions of the State Agency psychologists who reviewed the record

evidence and determined that Listing 12.05 was not met.[1] This is substantial evidence on which the ALJ relied and which support her conclusion that Listing 12.05B or C were not satisfied. *See Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir.2004) (completed disability forms in the record about whether a listing was met constitutes substantial evidence supporting an ALJ's Step Three finding where the ALJ did not reject evidence supporting the claimant's contrary position). Thus, the Court finds no error in the ALJ's Step Three determination or her failure to call a psychologist to testify as to medical equivalency.

## B. Credibility

Mr. Holt next argues that the ALJ made an erroneous credibility determination. He first argues that "the ALJ arbitrarily and erroneously rejected the psychological evaluation cited above which proved the claimant's combined impairments met or equaled Listing 12.05B or C and thus fully corroborated the claimant's allegations of total disability." Pl.'s Br. at 13. This argument has been addressed above and need not be repeated here.

Mr. Holt then takes issue with the ALJ's use of the standard "boilerplate" language. Indeed, the Seventh Circuit has "repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record." *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014) (citing *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)).

---

[1] Mr. Holt argues that the Commissioner made an "improper post hoc rationalization" in arguing that the State Agency psychologists' opinions supported the ALJ's medical equivalence determination. *See SEC v. Chenery Corp.*, 332 U.S. 194 (1947). This is incorrect. While the ALJ did not specifically cite to the particular page in the Record where the disability forms are found, it is obvious she relied on the State Agency psychologists' opinions as they are identical to her own. *See* R. at 15 and 255.

7

However, "the use of such boilerplate language will not automatically discredit the ALJ's ultimate conclusion if the ALJ otherwise identifies information that justifies the credibility determination." *Id.*

In this case, the Court agrees with the Commissioner that the ALJ gave an adequate explanation for her credibility determination. She emphasized Mr. Holt's activities of daily living including the fact that he went grocery shopping, was capable of making simple meals for himself, and performed household chores. Moreover, the ALJ noted Mr. Holt's "long work history of performing jobs including that at the semi-skilled level according to the vocational expert." R. at 17. In all, while the ALJ did include the boilerplate language, she offered much more than a perfunctory analysis, and the Court is satisfied with the sufficient explanation for her credibility determination.[2]

### C. Step Five

Finally, Mr. Holt argues that the ALJ's RFC "impermissibly failed to account for the claimant's mild mental retardation and illiteracy and the ALJ's assessed Moderate impairment in social functioning and Moderate impairment in concentration persistence or pace."[3] Pl.'s Br. at

---

[2] In his Reply, Mr. Holt argues that the ALJ's credibility determination was not justified because "the ALJ's explanation depended on her misstatement of the evidence that there was no evidence that the claimant had anxiety contrary to Dr. Hoye's diagnosis of 'Adjustment disorder with anxious mood.'" Pl.'s Reply at 7. While this argument is less than clear, the Court simply notes that the ALJ found that Mr. Holt's anxiety was not a severe impairment, *see* R. at 14; it does not appear to the Court that this finding influenced her credibility determination.

[3] Mr. Holt notes that the ALJ found that he had moderate limitations in social functioning and concentration, persistence, and pace, citing to page 15 of the Record. This page contains the ALJ's Step Three determination. It is true that the ALJ found that Mr. Holt had moderate difficulties with social functioning and concentration, persistence, and pace in evaluating whether he met the requirements of paragraph B at Step Three; this, however, is not an RFC assessment. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). In fact, the ALJ noted this in her decision. *See* R. at 15.

8

17. Again, the Court need not address Mr. Holt's repeated argument regarding his "mild mental retardation and illiteracy" as that has been addressed above. The Court thus turns to his argument regarding his moderate limitations in social functioning and concentration, persistence, and pace.

On March 8, 2011, Mr. Holt underwent a mental RFC assessment conducted by Dr. Gange. Mr. Holt was noted to be "Moderately Limited" in his "ability to carry out detailed instructions," his "ability to understand and remember detailed instructions," and his "ability to interact appropriately with the general public." R. at 253-54. In all other categories, he was noted to be "Not Significantly Limited." *Id*. Dr. Gange explained his findings at the end of the assessment, noting that Mr. Holt was "mildly limited in social interaction" and "moderately limited in concentration, pace, and persistence." *Id*. at 255. He concluded by opining that Mr. Holt "maintains [the] ability to understand, remember, and carry-out simple unskilled tasks. He has the social interaction ability to relate to others on at least a superficial basis." *Id*. Dr. Gange's assessment was affirmed by Dr. Kenneth Neville on April 28, 2011. *Id*. at 270.

The ALJ's RFC was consistent with this assessment: "the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but can only perform simple, routine tasks and should avoid contact with the public for work related purposes and no more than occasional contact with co-workers and supervisors." *Id*. at 16. So too was the hypothetical given to the VE: "[c]onsider an individual . . . who . . . is limited to simple, repeated, routine tasks, should not come into contact with the public for work related purposes, but can, can come into occasional contact with coworkers and supervisors." *Id*. at 39. The Court thus agrees with the Commissioner that the ALJ's RFC and hypotheticals given to the VE were entirely consistent with the mental RFC assessment completed by Dr. Gange and

9

affirmed by Dr. Neville. *See Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (upholding an ALJ's RFC assessment because he relied on a doctor who "went further and translated those findings into a specific RFC assessment, concluding that [the claimant] could still perform low-stress, repetitive work"). Accordingly, the Court finds no reversible error.

### VI. CONCLUSION

The ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 11/13/14

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication